# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MADALYN ROSE WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11-1618 |
| v. ) | |
| ) | **ELECTRONICALLY FILED** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

Madalyn Rose Wilson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). This matter comes before the Court upon cross-motions for summary judgment. (ECF Nos. 10, 12). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be GRANTED, in part, and DENIED, in part, and Defendant's Motion for Summary Judgment will be DENIED.

### II. PROCEDURAL HISTORY

Plaintiff filed for SSI with the Social Security Administration on March 1, 2010, claiming an inability to work due to disability beginning January 21, 2004. (R. at 234 – 41)[1]. Plaintiff was initially denied benefits on April 22, 2010. (R. at 186 – 90). A hearing was scheduled for

---
[1] Citations to ECF Nos. 6 – 6-13, the Record, *hereinafter*, "R. at __."

March 31, 2011. (R. at 27 – 71). Plaintiff was attending college in California and chose not to appear at the hearing. (R. at 27 – 71). Plaintiff's mother, Mrs. Renee Wilson, testified in Plaintiff's stead and in the presence of Plaintiff's attorney. (R. at 27 – 71). A vocational expert also testified. (R. at 27 – 71). The Administrative Law Judge ("ALJ") issued her decision denying benefits to Plaintiff on May 26, 2011. (R. at 12 – 26). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on November 3, 2011, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 6).

Plaintiff filed her Complaint in this Court on December 23, 2011. (ECF No. 3). Defendant filed his Answer on March 1, 2012. (ECF No. 5). Cross-motions for summary judgment followed.

### III. STATEMENT OF THE CASE

In her decision denying DIB to Plaintiff, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 28, 2010, the application date;
2. The claimant has the following severe impairments: status post Hodgkin's lymphoma, thyroid disease, and chronic pain syndrome/fibromyalgia;
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1;
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except the claimant must be afforded the option to sit, stand, and walk at will for 2 to 3 minutes at a time; is limited to occasional postural maneuvers; must avoid exposure to temperature extremes, vibration, humidity, and hazards (like unprotected heights); and is limited to jobs that allow ready access to a restroom and the ability to us it;
5. The claimant has no past relevant work;
6. The claimant was born on January 28, 1992 and was 18 years old, which is defined as a younger individual age 18-44, on the date the application was filed;
7. The claimant has at least a high school education and is able to communicate in English;

2

8. Transferability of job skills is not an issues because the claimant does not have past relevant work;
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform;
10. The claimant has not been under a disability, as defined in the Social Security Act, since February 28, 2010, the date the application was filed.

(R. at 12 – 22).

### IV. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the

4

impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to give appropriate weight to the opinion of Plaintiff's treating oncologist with respect to Plaintiff's functional limitations, in failing to include all of Plaintiff's physical and mental disorders as severe impairments at Step 2 of her analysis, and in failing to fully accommodate all of

5

Plaintiff's credible, medically established limitations in her hypothetical question and residual functional capacity assessment ("RFC"). (ECF No. 13 at 9, 11, 13). Defendant counters that the ALJ's specific findings within her decision were bolstered by the objective medical evidence in Plaintiff's record, and that the ALJ's ultimate denial of benefits was thereby supported by substantial evidence. (ECF No. 11 at 9 – 13).

### A. *Plaintiff's Treating Oncologist*

Plaintiff first claims that the opinion of oncologist/ hematologist John K. Waas, D.O., dated November 15, 2009, should have been adopted by the ALJ as authoritative because it was written by a long-treating physician and because the ALJ failed to adduce evidence to contradict Dr. Waas' functional limitations findings and assertion of permanent disability. (ECF No. 13 at 9 – 11). In her decision, the ALJ accorded little weight to Dr. Waas' conclusion that Plaintiff suffered permanent disability, because his report was not intended to address Plaintiff's ability to work and because the objective findings therein were not particularly severe. (R. at 20 – 21).

Plaintiff was diagnosed with aggressive, metastatic stage IV A Hodgkin's lymphoma in the cervical spine in 2004, at the age of twelve. (R. at 383, 394). Cancer treatment – though effective – left Plaintiff's cervical spine unstable. (R. at 383, 394). She was briefly rendered quadriplegic. (R. at 394). Plaintiff thereafter underwent numerous surgeries. (R. at 383). In 2007, an operation to stabilize Plaintiff's cervical spine resulted in the implantation of numerous rods and screws between the C2 and T2 levels of Plaintiff's spine. (R. at 383, 394). Plaintiff's treating oncologist/ hematologist was Dr. Waas.

Plaintiff's medical record contains the notes of a regular check-up in September 2009, wherein Dr. Waas recorded that Plaintiff complained of occasional fatigue, excessive sleep, some cold intolerance, some symptoms suggestive of hypothyroidism, and depression. (R. at

396). Plaintiff's lymphoma was in remission, she was actively engaged in pain management, she exhibited no signs of decline in health, and she seemed to be "thriving." (R. at 396). Dr. Waas stated that he wished for Plaintiff to return for a check-up before departing for college. (R. at 396).

On November 15, 2009, Dr. Waas drafted a letter to the administration at Plaintiff's university seeking certain academic and residential accommodations for Plaintiff due to limitations stemming from treatment of her cancer and related conditions. (R. at 394 – 95). Dr. Waas indicated that despite operations to stabilize her spine, Plaintiff relied upon opiate analgesics for chronic pain, she suffered chronic neuropathy and paresthesias – particularly in her right leg – which affected her gait and ability to posture, and she struggled with chronic fatigue and sleep disturbance secondary to pain and affective disorder. (R. at 394 – 95). Plaintiff also experienced depression and anxiety – issues common to young patients treated for Hodgkin's lymphoma. (R. at 394 – 95). Plaintiff and her mother informed Dr. Waas that Plaintiff had difficulty maintaining activities of daily living. (R. at 394 – 95).

Yet, Dr. Waas stated that Plaintiff had relatively good control of her pain using analgesics, without complications, and was able to ambulate without assistance. (R. at 394 – 95). Her lymphoma was in remission. (R. at 394 – 95). She was able to concentrate and accomplish her studies as a high school senior. (R. at 394 – 95). In terms of "major life activities," Dr. Waas felt that Plaintiff would only be most limited in her ability to engage in sports and normal exercise. (R. at 394 – 95). Dr. Waas asked that the school provide Plaintiff with a private dormitory room in order for her to control her environment, receive adequate periods of rest, and be able to access her medications without fear of theft. (R. at 394 – 95). Dr. Waas also asked that Plaintiff be allowed to get up during classes and take breaks to avoid joint stiffness and

worsening pain. (R. at 394 – 95). Dr. Waas further opined that Plaintiff's "disability" was permanent. (R. at 394 – 95).

Plaintiff was evaluated by Dr. Waas at a regular check-up on August 2, 2010. (R. at 526). At that time, Dr. Waas stated that Plaintiff complained of chronic, intractable pain, anhedonia, asthenia, and depressed mood. (R. at 526). Plaintiff's pain allegedly interrupted her sleep, resulting in chronic fatigue. (R. at 526). Plaintiff also complained of difficulty with activities of daily living, varying appetite, anorexia, and nausea. (R. at 526). Aside from Plaintiff's complaints, Dr. Waas opined that a 10-point systems review was negative. (R. at 526).

Dr. Waas observed that Plaintiff appeared to be in some discomfort, her neck muscles were tense, she had back and neck pain with movement, and her ambulation was slow. (R. at 526). Her gait was not ataxic, however. (R. at 526). A scan of Plaintiff's cervical spine showed abnormalities at the site of some of her screws. (R. at 526). Scarring was noted in and around the cervical spine at previous surgery sites. (R. at 526). Dr. Waas stated that Plaintiff's pain was "barely controlled with oral analgesics." (R. at 526). Plaintiff's cancer was still in remission. (R. at 526). The record contains no other treatments notes from Dr. Waas[2].

Plaintiff is correct in her argument that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's

---

[2] Plaintiff suggests that the court should consider Dr. Waas' opinion dated June 7, 2011 – Exhibit 22F (R. at 572 – 74) – when determining whether the case should be remanded. (ECF No. 13 at 10 n. 1, 11). However, Exhibit 22F, having been newly submitted to the Appeals Council, will not be considered and will not inform the decision of this court. *See Matthews v. Apfel*, 239 F. 3d 589, 592, 594 – 95 (3d Cir. 2001). The Appeals Council may decline review of a claimant's case when the ALJ's decision is not at odds with the weight of the evidence on record. *Matthews*, 239 F.3d at 592. In such a case, a district court can only review that evidence upon which the ALJ based his or her decision. *Id.* at 594 – 95. As a result, new evidence presented by a claimant to the Appeals Council, but not reviewed, is not within the purview of a district court when judging whether substantial evidence supported an ALJ's determination. *Id.* Such is the case at present. Additionally, Plaintiff failed to make the required showing under *Szuback v. Sec'y of Health and Human Serv.*, 745 F. 2d 831 (3d Cir. 1984), for remand to reconsider the case in light of newly submitted evidence. Therefore, Exhibit 22F (R. at 572 – 74) will not be discussed.

medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). She is also correct in asserting that only a showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Id.* Plaintiff's arguments notwithstanding, the ALJ adequately met her burden in these respects. Further, although Dr. Waas did indicate that Plaintiff was permanently disabled, the determination of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

As discussed by the ALJ with regards to the November 15, 2009 opinion, when Dr. Waas mentioned that Plaintiff experienced permanent disability, it was in the context of seeking certain accommodations for Plaintiff while attending college – not to indicate the degree of functional limitation she would experience in a work setting. (R. at 20 – 21). Dr. Waas' vague statement gave no indication as to what he was referring to when he stated that Plaintiff was disabled. Also, although Plaintiff claimed that she had difficulty with activities of daily living, Dr. Waas mentioned only that she would experience significant limitation with respect to sports activities and exercise. (R. at 18 – 21). Plaintiff's pain was noted to be well-controlled on her medications, without side effects. (R. at 18 – 19). Plaintiff ambulated without assistance. (R. at 18 – 19). Moreover, she was fully capable of meeting the demands of her senior year in high school. (R. at 18 – 19).

9

In fact, Plaintiff points to no specific limitations findings within the November 15, 2009 report by Dr. Waas that were not included by the ALJ in her hypothetical question or RFC. The ALJ noted that Dr. Waas did not provide limitations findings more severe than her own. (R. at 20 – 21). While Plaintiff's general assertion is that it was error for the ALJ not to adopt the November 15, 2009 opinion of Dr. Waas, Plaintiff fails to explain what advantage would have been gained by Plaintiff had the ALJ done so. Based upon Dr. Waas' statements therein, it appears that there would not have been any significant change in the ALJ's ultimate decision. The objective medical observations made by Dr. Waas in the report did not rise to the level of what is required to sustain a claim of permanent disability under the Act. Substantial evidence therefore supported the ALJ's decision to accord little weight to Dr. Waas' statement that Plaintiff suffered a permanent disability.

B. *Step 2 Determination – Severe Impairments*

Plaintiff next argues that that ALJ erred in failing to find at Step 2 of the 5-step review process that Plaintiff had "severe" impairments in the way of depression, sleep disturbance, affective disorder, anxiety, spinal stenosis, and degenerative joint disease. (ECF No. 13 at 11 – 13). "Severe" impairment is defined by regulation as "any impairment . . . which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The determination of whether or not an alleged impairment is "severe," is no more than a "*de minimis* screening device to dispose of groundless claims." *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F. 3d 541, 546 (3d Cir. 2003)). Impairment is not "severe" where the record demonstrates only "slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.*

Given, then, that the purpose of Step 2 is merely to serve a minimal gate-keeping function, Plaintiff's burden is not an exacting one. *McCrea v. Comm'r of Soc. Sec.*, 370 F. 3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85-28, 1985 WL 56856 at *3). Reasonable doubts regarding the evidence should be construed in the light most favorable to the claimant. *Newell*, 347 F. 3d at 547. Further, the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *McCrea*, 370 F. 3d at 360 – 61. The Court must look to whether the ALJ provided substantial evidence as justification for her decision. *Kirk v. Comm'r of Soc. Sec.*, 177 Fed. App'x 205, 207 (3d Cir. 2006); *McCartney v. Comm'r of Soc. Sec.*, 2009 WL 1323578 at *13 – 16 (W.D. Pa. May 8, 2009).

First, the Court finds that Plaintiff's assertion that the ALJ was required to include degenerative joint disease and spinal stenosis as severe impairments is unfounded. As support for this contention, Plaintiff cites to Dr. Waas' November 15, 2009 assessment of Plaintiff's functionality, and to March 27, 2010 diagnostic imaging of Plaintiff's spine. (ECF No. 13 at 12). Yet, Dr. Waas made no limitations findings specific to spinal stenosis or degenerative joint disease. (R. at 394 – 95). As discussed above, the ALJ accommodated the few limitations findings included within Dr. Waas' November 15, 2009 assessment.

Additionally, Plaintiff incorrectly states that her March 27, 2010 diagnostic imaging results revealed "significant degenerative changes." (ECF No. 13 at 12). In a series of studies of the cervical, thoracic, and lumbar spine dated March 27, 2010, imaging showed "no change in positioning of hardware," "no acute fracture or dislocation," "no bony erosive or destructive changes," "anatomic alignment of the lumbar spine with preservation of vertebral body heights," "no significant degenerative changes," "L4-L5 retrolisthesis minimally," and "paravertebral soft tissues are normal." (R. at 105 – 08, 120 – 22). Further, diagnostic imaging on June 25, 2010

did not show significant degenerative changes. (R. at 171 – 72). Substantial evidence, therefore support the ALJ's decision to reject Dr. Waas' finding of permanent disability.

Regarding the ALJ's treatment of Plaintiff's alleged depression, sleep disorder, anxiety, and affective disorder, Plaintiff demonstrates that there was a lack of adequate explanation by the ALJ. The ALJ devoted significant discussion to her decision not to include depression as a severe impairment. (R. at 14 – 16). However, her lengthy rationale was insufficient to constitute substantial evidence. The ALJ first discussed a psychiatric hospitalization of Plaintiff at Latrobe Hospital in Latrobe, Pennsylvania for approximately two days due to suicidal statements made by Plaintiff to her parents. (R. at 334 – 53). Plaintiff had been attempting to wean herself from narcotic pain medication she had used for years following her cancer treatment to maintain her pain and functionality. (R. at 334 – 53). Plaintiff was observed to be depressed, but she expressed that she had not actually intended to commit suicide. (R. at 334 – 53). Plaintiff was provided with prescription medication for her pain and mental condition. (R. at 334 – 53). She was still upset and tearful at the time of discharge, but was determined to be stable enough to return home. (R. at 334 – 53). Plaintiff was diagnosed with depression and a history of opiate dependence from pain medications. (R. at 334 – 53).

Thereafter, as discussed by the ALJ, Plaintiff was evaluated by therapist Patricia Kubistek, L.C.S.W., state agency consultant Roger Glover, Ph.D., and Joseph Perry, Ph.D. (R. at 15 – 16). The ALJ mentioned that all of these medical sources indicated that Plaintiff suffered from depression – among other mental conditions – and that she experienced moderate difficulties in the areas of social functioning, occupational functioning, and maintaining concentration, persistence, or pace. (R. at 15 – 16). She also noted that Plaintiff did not generally engage in regular psychiatric treatment with a specialist, and did not have further

psychiatric hospitalizations. (R. at 15 – 16). The ALJ ultimately disregarded the moderate limitations findings as inconsistent with Plaintiff's treatment record and her activities of daily living, finding Plaintiff had only mild restrictions. (R. at 15 – 16).

The ALJ erred by citing no medical evidence which squarely contradicted the findings by three medical sources that Plaintiff's depression and other mental ailments resulted in various moderate limitations in functional capacity. (R. at 14 – 16). The ALJ attempted to use Plaintiff's claimed activities of daily living to discredit the medical sources' statements regarding Plaintiff's limitations, but – contrary to the statement by the ALJ – Plaintiff did describe problems with numerous activities of daily living. (R. at 291 – 301). Given this deficiency in the ALJ's reasoning, the court cannot find that substantial evidence supported the ALJ's assertion that depression was not a severe impairment at Step 2. A claimant's burden at Step 2 is easily met. The consistent findings of three medical sources indicating that Plaintiff's depression and other mental conditions moderately limited her functionality passes the *de minimis* test requiring only that there be more than minimal limitations. Plaintiff's mental condition should be more thoroughly evaluated upon remand.

C. *Hypothetical Question and RFC*

In light of the ALJ's failure to adequately account for all of Plaintiff's impairments, this Court will not find that the ALJ's hypothetical question and RFC included sufficient accommodation for all limitations stemming from Plaintiff's medically determinable severe impairments.

## VI. CONCLUSION

Based upon the foregoing, the Court finds a lack of substantial evidence to support the ALJ's decision to deny benefits to Plaintiff. "On remand, the ALJ shall fully develop the record and explain [his or her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 – 01 (3d Cir. 2010). *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010). Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ. *Id.* at 801 n. 2.

Accordingly, Plaintiff's Motion for Summary Judgment will be granted, to the extent it sought remand for reconsideration of the relevant issues, but said Motion will be denied, to the extent it sought an immediate award of benefits; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be vacated and remanded for further consideration consistent with this opinion. An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf: All counsel of record.